JUSTICE TRIEWEILER
delivered the Opinion of the Court.
¶1 The Plaintiff, Stephen Bradley, brought this action for breach of contract by the Defendant, Crow Tribe of Indians, in the District Court for the Thirteenth Judicial District in Yellowstone County. The District Court dismissed Bradley’s complaint based on sovereign immunity. Bradley appeals from the District Court’s order dismissing the complaint. We reverse and remand for further proceedings.
¶2 The issue on appeal is whether the District Court erred when it dismissed Bradley’s claim based on its conclusion that the Tribe had not unequivocally waived its immunity from suit in state court.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 In 1994, Stephen Bradley, a member of the Crow Tribe, assisted the Tribe in the formation of a corporation to develop a coal power plant and obtain federal funding for its construction. The Tribe passed Resolution No. 95-02 on October 8,1994, which authorized the project and permitted the Chairperson of the Tribe and other designated *77 officers to negotiate contracts on behalf of the power plant project. Bradley alleges that on or about November 15, 1994, he entered into a seven-year service contract with the Tribe, by which he agreed to provide consulting services and act as program director for the planning and construction of a power plant on tribal property and the Tribe agreed to pay him for his services. Bradley signed and submitted a copy of the contract drafted by him to the Tribe for signature. The written contract includes a provision that states:
11. MONTANA LAW AND VENUE
The parties agree that any action at law, suit in equity, or judicial proceeding for the enforcement of this AGREEMENT or any provision thereof shall be instituted only in the courts of the STATE OF MONTANA, and it is mutually agreed that this AGREEMENT shall be governed by the laws of the STATE OF MONTANA, both as to interpretation and performance. [Emphasis in original.]
Clara Nomee, who was the Chairperson of the Tribe at that time, recalled signing the contract, but neither party has a copy of a contract signed by Nomee or any other authorized representative of the Tribe.
¶4 From 1994 until 2000, Bradley provided his consulting services for the Tribe. In 1998, however, the Tribe became aware of impropriety by officials in the Tribal Government and, as a result of a criminal investigation, Nomee was convicted of embezzlement in federal court on September 16, 1998, and was removed from her position as Chairperson of the Tribe. On July 8,2000, the Tribe passed Resolution No. 2000-30, that addressed prior acts of Nomee’s alleged misconduct, including her conduct involving the power plant project. The resolution concluded that Nomee:
[0]perated in an improper, illegal, unethical manner, in violation of the laws of the Crow Tribe by using Resolution 90-35, which is unconstitutional on its face, when Nome[e] and her administration failed to comply with the provision contained in Resolution 90-35, requiring that all decisions made by Nomee or her administration between Tribal Council meetings, be ratified at the next Tribal Council meeting ....
Resolution 2000-30 declared that all decisions, contracts and agreements made by Nomee were thereafter voidable and on August 15, 2000, Clifford BirdinGround, then the Chairperson of the Crow Tribe, sent a Notice of Termination to Bradley, which stated:
The Crow Tribe hereby provides thirty (30) day notice of its intention to terminate the consultant agreement entered into by *78 yourself and the previous elected administration ....
¶5 On October 10, 2000, Bradley filed a complaint in District Court, alleging that the Tribe breached its contract with him and had failed to pay him as provided by contract. On December 19, 2000, the Tribe moved to dismiss the action on grounds that the District Court lacked personal and subject matter jurisdiction due to the Tribe’s sovereign immunity. The District Court denied the Tribe’s motion to dismiss on February 8, 2001, concluding that the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1604 to 1607, permitted Indian tribes to be sued in state and federal courts for causes of action arising from “commercial activities” carried on in the United States, and that the alleged contract provision was a waiver of the Tribe’s sovereign immunity. However, the District Court reserved the right to readdress the issue of subject matter jurisdiction.
¶6 Following further discovery, neither party could locate or produce a copy of the written contract that was signed by an authorized representative of the Tribe.
¶7 On November 27,2001, Bradley moved for summary judgment. In support of his motion, Bradley filed the sworn affidavit of Clara Nomee dated July 12, 2001. In the affidavit, she stated that she had signed a contract with Bradley to administer the power plant project. She recognized the written contract relied on by Bradley, and declared in her affidavit that:
Although I have no specific recollection of exactly when I signed this document, I am quite certain I did sign it. I would recall any reason for.not doing so, and there were none. Further, I do know that under a federal grant program if a contract was not signed, we were not allowed to disburse funds. Failure to have a signed contract would have been called to my attention immediately by the accountants, and there was no such communication.
Also submitted in support of the motion was an affidavit by Bradley in which he claimed the existence of a contractual relationship between him and the Tribe.
¶8 The Tribe failed to timely respond to Bradley’s motion, and the District Court granted Bradley’s motion on February 5, 2002, and entered judgment on February 15, 2002.
¶9 On March 12, 2002, the Tribe moved to alter or amend the judgment of the District Court pursuant to Rule 59(g), M.R.Civ.P., and in the alternative, to set aside the judgment pursuant to Rule 60(b), M.R.Civ.P. The Tribe contended that its prior counsel had failed to notify the Tribe of the existing matter or the motions pending before *79 the District Court and, as a result, the Tribe had not filed a timely brief in opposition to summary judgment. The Tribe also argued that the District Court should consider the Tribe’s motion because it addressed sovereign immunity and whether the District Court had the subject matter jurisdiction to enforce the terms of the alleged contract.
¶10 The District Court ordered a hearing on the matter for April 18, 2002. The parties did not dispute that there was some contractual relationship between Bradley and the Tribe, but argued that there was no formal written contract signed by the Tribe that waived their immunity from suit in state court, and that there was a dispute as to whether the alleged written contract contained the actual terms of Bradley’s contract with the Tribe. However, no evidence was submitted which controverted Nomee’s or Bradley’s affidavits. The District Court found that there was an express agreement which had been partially performed and that it included a waiver of tribal immunity from suit in state court. However, the District Court concluded that because a signed copy of the agreement had not been produced, it was not sufficient to overcome the presumption against waiver of immunity and dismissed the action for lack of jurisdiction.
STANDARD OF REVIEW
¶11 “[A] court’s determination of a motion to dismiss based on a claim of sovereign immunity is a legal question over which our review is plenary.” Thompson v. Crow Tribe of Indians, 1998 MT 161, ¶ 10, 289 Mont. 358, ¶ 10, 962 P.2d 577, ¶ 10 (citation omitted). A determination by a district court that it lacks subject matter jurisdiction is a conclusion of law that we will review for correctness. General Constructors v. Chewculator, Inc., 2001 MT 54, ¶ 16, 304 Mont. 319, ¶ 16, 21 P.3d 604, ¶ 16.
¶12 “When deciding a motion to dismiss based on lack of subject matter jurisdiction, a trial court must determine whether the complaint states facts that, if true, would vest the court with subject matter jurisdiction.” General Constructors, ¶ 16 (citing Liberty v. State Fund, 1998 MT 169, ¶ 7, 289 Mont. 475, ¶ 7, 962 P.2d 1167, ¶ 7). A motion to dismiss “should be construed in a light most favorable to the non-moving party and should not be granted unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief.” General Constructors, ¶ 17 (citation omitted).
*80 DISCUSSION
¶13 Did the District Court err when it dismissed Bradley’s claim based on its conclusion that the Tribe had not unequivocally waived its immunity from suit in state court?
¶14 The District. Court recognized the contractual relationship between Bradley and the Tribe; however, it concluded that because it was a contract for employment for more than one year, the Statute of Frauds, found at § 28-2-903(1), MCA, is applicable. The District Court then concluded that Bradley’s performance of the contract would normally create an exception to the applicability of the Statute of Frauds pursuant to the court’s “equitable powers,” but concluded that in this case to exercise those powers would circumvent the Tribe’s sovereign immunity and be contrary to federal law. Specifically, the District Court stated:
Federal case law does not support this Court using its equitable powers under Montana law to (1) lift the Agreement out of the Statute of Frauds thereby making it a valid contract pursuant to Montana law, and in turn (2) using that valid contract under Montana law to establish a clear waiver of tribal immunity under federal constitutional case law.
¶15 Bradley contends that his allegations and evidence show that the Tribe did waive its sovereign immunity and that the District Court erred by denying him the opportunity to present additional evidence and testimony on the issue of waiver, especially considering that the Tribe presented no contradictory evidence or affidavits.
¶16 The Tribe contends that Bradley had the burden of proving unequivocal waiver and that because he was unable to produce a signed contract, there was insufficient direct evidence to prove that the Tribe consented to waive its sovereign immunity. Without a signed written waiver, the Tribe contends that the District Court could, at best, find an implied waiver, which is insufficient to avoid the Tribe’s sovereign immunity. Furthermore, the Tribe contends that Nomee’s and Bradley’s affidavits lack credibility, and that Nomee’s affidavit failed to “affirmatively and unequivocally state that she signed the contract.” Finally, the Tribe contends that the District Court correctly dismissed the complaint because the validity and the terms of the contract should be litigated in tribal court.
¶17 We begin our analysis by recognizing that Indian tribes generally enjoy common-law immunity from suit, although this right is subject to the control of Congress. Wippert v. Blackfeet Tribe (1993), 260 Mont. 93,104, 859 P.2d 420, 426; Santa Clara Pueblo v. Martinez (1978), 436 *81 U.S. 49, 58, 98 S.Ct. 1670, 1677. In addition, we recognize that the sovereign immunity of Indian tribes “is a matter of federal law and is not subject to diminution by the States.” Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc. (1998), 523 U.S. 751, 756, 118 S.Ct. 1700, 1703, 140 L.Ed.2d 981. We have previously acknowledged, however, that Indian tribes may waive their right to sovereign immunity and consent to suit in state courts. Wippert, 260 Mont. at 104, 859 P.2d at 426 (citing Santa Clara Pueblo, 436 U.S. at 58, 98 S.Ct. at 1677). Any waiver of sovereign immunity, however, “cannot be implied but must be unequivocally expressed.” United States v. King (1969), 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52; see Thompson, ¶ 20; see also C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla. (2001), 532 U.S. 411, 418, 121 S.Ct. 1589, 1594, 149 L.Ed.2d 623 (“A tribe’s waiver must be ‘clear’”). “There is a strong presumption against waiver of tribal sovereign immunity.” DeMontiney v. U.S. ex rel. Dept. of Interior (9th Cir. 2001), 255 F.3d 801, 811 (citing Pan American Co. v. Sycuan Band of Mission Indians (9th Cir. 1989), 884 F.2d 416, 419).
¶18 Although neither this Court nor the United States Supreme Court have specifically addressed the procedural requirements that a district court should follow when determining whether an Indian tribe has waived its sovereign immunity, we find several decisions in the federal circuits to be persuasive and adopt the following guidelines. The D.C. Circuit Court of Appeals held that where a motion to dismiss is based on a claim of sovereign immunity, “the court must engage in sufficient pretrial factual and legal determinations to ‘satisfy itself of its authority to hear the case’ before trial.” Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan (D.C. Cir. 1997), 115 F.3d 1020, 1027-28 (quoting Prakash v. American University (D.C. Cir. 1984), 727 F.2d 1174, 1179); see also Foremost-McKesson v. Islamic Republic of Iran (D.C. Cir. 1990), 905 F.2d 438, 449 (where foreign sovereign immunity was asserted, “more than the usual is required of trial courts in making pretrial factual and legal determinations”). In Prakash, the D.C. Circuit Court of Appeals stated:
When subject-matter jurisdiction is questioned, the court must, of course, satisfy itself of its authority to hear the case, and in so doing, it may resolve factual disputes. The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction, and normally it may rely upon either written or oral evidence. The court must, however, afford the nonmoving party “an ample opportunity to secure and present *82 evidence relevant to the existence of jurisdiction.”
Prakash, 727 F.2d at 1179-80 (quoting Gordon v. National Youth Work Alliance (D.C. Cir. 1982), 675 F.2d 356, 363) (other citations omitted); see also Local 336, American Fed. of Musicians, AFL-CIO v. Bonatz (3rd Cir. 1973), 475 F.2d 433, 437 (“[W]e have never departed from the rule that even on such an issue the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention”). With respect to the plaintiff’s burden in these proceedings, the Second Circuit Court of Appeals stated that the plaintiff must prove by a preponderance of evidence that jurisdiction exists. See Garcia v. Akwesasne Housing Authority (2nd Cir. 2001), 268 F.3d 76, 84 (rule applies when an Indian tribe claims sovereign immunity); Makarova v. U.S. (2nd Cir. 2000), 201 F.3d 110, 113 (rule applies when the United States claims sovereign immunity).
¶19 In this case, Bradley contends that the District Court erred by concluding that an equitable exception to the Statute of Frauds could not overcome sovereign immunity. We agree that the District Court employed an incorrect analysis. While tribal immunity is a federal rule of law-the waiver of which must be unequivocally expressed, the Statute of Frauds is a state rule of law. Partial performance is an equitable exception to that state rule of law. See Hayes v. Hartelius (1985), 215 Mont. 391, 396-97, 697 P.2d 1349, 1353. It is a method of proving unequivocal waiver. It is not an exception to the immunity itself.
¶20 Montana’s Statute of Frauds, § 28-2-903(1), MCA, is a statute that limits the enforceability of certain contracts: it is not a statute that affects a district court’s subject matter jurisdiction. Other jurisdictions have reached a similar conclusion. See Chambers v. Industrial Com’n (Ill. 1989), 547 N.E.2d 470, 471 (“[T]he statute of frauds merely sets forth a writing requirement for certain classes of contracts. It cannot confer subject-matter jurisdiction”); see also Holley Equipment Co. v. Credit Alliance Corp. (11th Cir. 1987), 821 F.2d 1531, 1535 (The Eleventh Circuit Court of Appeals concluded that a district court erroneously dismissed a case for a lack of subject matter jurisdiction where the dismissal was based upon a defendant’s successful affirmative defense that Alabama’s Statute of Frauds, Ala.Code § 7-2-201, precluded recovery on an alleged contract). The District Court need not consider Montana’s Statute of Frauds when determining whether it has subject matter jurisdiction; nor does it *83 need to invoke its “equitable powers” to find jurisdiction.
¶21 Nor is the Tribe correct when it contends that because a signed copy of the contract has not been produced, the waiver can only be implied and is not unequivocal. Whether the waiver is unequivocal, depends on the language of the contract itself-in this case Paragraph 11-which the District Court correctly concluded was sufficient to waive jurisdictional objections. Whether or not the contract was signed simply relates to whether Paragraph 11 had been agreed upon. That fact was also subject to proof by direct testimony or affidavit from parties authorized to execute the contract-in this case Clara Nomee and Stephen Bradley.
¶22 In this case, it is apparent that because of its erroneous reliance on the Statute of Frauds and its equitable powers, the District Court failed to address the only factual consideration that was essential to a determination of whether the Tribe “clearly” and “unequivocally’ waived its sovereign immunity. Bradleys complaint alleged sufficient facts that, if true, would vest the District Court with subject matter jurisdiction. See General Constructors, ¶ IQ) Liberty, ¶ 7. Bradley provided a copy of the alleged written contract between the parties, alleged that Nomee signed it as an authorized representative, and Nomee signed an affidavit testifying to that effect. The Tribe disputes the credibility of Bradley and Nomee, and whether the alleged written contract contained the actual contractual terms between Bradley and the Tribe. However, the Tribe produced no evidence to refute the affidavits of the authorized signatories of the contract. Nor did it provide any other contract pursuant to which Bradley could have been performing for the previous six years. Nomee’s affidavit was not equivocal. In reference to the contract she stated: “I am quite certain I did sign it.” Had the Tribe controverted either of the affiants or offered direct evidence to contradict their recollections of the agreement we would remand for resolution of that limited factual issue. However, because there is, in the present posture of the case, no factual issue to resolve, we conclude that the undisputed evidence establishes that a contract between Stephen Bradley and the Crow Tribe, which included the unequivocal waiver of sovereign immunity found at paragraph 11, was proven. Therefore, we reverse the District Court’s order which dismissed Bradleys complaint for lack of jurisdiction and remand to the District Court for further proceedings.
JUSTICES LEAPHART, COTTER and RICE concur.