# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 06-1542


**MEYER & ASSOCIATES, INC.**

**VERSUS**

**COUSHATTA TRIBE OF LOUISIANA**


************

ON SUPERVISORY WRIT FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2006-2683,
HONORABLE R. RICHARD BRYANT, JR., DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Michael G. Sullivan, Glenn B. Gremillion, and James T. Genovese, Judges.


**WRIT GRANTED.**

Jimmy R. Faircloth, Jr.
Faircloth, Vilar & Elliott, LLC
Post Office Box 12730
Alexandria, Louisiana 71315-2730
(318) 442-9533
Counsel for Defendant/Applicant:
    Coushatta Tribe of Louisiana

Richard P. Ieyoub
James E. Moore, Jr.
Couhig Partners, LLP
One American Place, Suite 900
Baton Rouge, Louisiana 70825
(225) 282-0600
Counsel for Plaintiff/Respondent:
    Meyer & Associates, Inc.

**Lynn H. Slade**
**Modrall, Sperling, Roehl, Harris & Sisk, PA**
**Bank of America Centre**
**500 Fourth Street N.W., Suite 1000**
**Albuquerque, New Mexico  87102**
**(505) 848-1800**
**Counsel for Plaintiff/Respondent:**
**Meyer & Associates, Inc.**

SULLIVAN, Judge.

In this writ application, the Coushatta Tribe of Louisiana (Coushatta) urges that the trial court erred in determining that it had subject matter jurisdiction in this matter and that its Tribal Court, not the trial court, should determine whether the Tribal Council's Chairman and/or his designee had authority to waive Coushatta's sovereign immunity in a series of contractual agreements. For the following reasons, we stay this matter to allow the Tribal Court to make this determination.

*Facts*

Coushatta is a federally recognized Indian tribe with its reservation located approximately three miles north of Elton in Allen Parish, Louisiana. It is governed by a Tribal Council, consisting of a Chairman and four Council members.

In 2001, Coushatta entered into a contractual relationship with Meyer and Associates, Inc. (Meyer). Meyer, a general consulting engineering firm, contracted to provide professional services to Coushatta in connection with a capital improvement program it had instituted. Their agreement was initially set forth in an Agreement for Professional Services.

On January 14, 2003, Coushatta and Meyer entered into an Interim & Definitive Supplemental Agreement to Existing Agreement for the development of a Power Program (Supplemental Agreement). In furtherance of Coushatta's stated interest in developing potential energy projects and a related industrial park to diversify its economic welfare, the Supplemental Agreement provided for the design, construction, maintenance, and operation of an electric-power-generating facility (Power Plant Project). It revised the Agreement for Professional Services in a number of respects. Thereafter, Memoranda of Agreement were executed which also

amended the Supplemental Agreement. Pursuant to the terms of the contracts, Coushatta committed to invest millions of dollars in the Power Plant Project.

After disputes arose in the execution of these joint venture contracts, Coushatta filed suit in its Tribal Court on April 26, 2006, against Meyer and Richard T. Meyer, seeking a declaratory judgment, injunctive relief, and damages for actions arising out of these contracts. On June 6, 2006, Meyer filed suit in the Fourteenth Judicial District Court for the Parish of Calcasieu against Coushatta. Meyer then filed motions to dismiss Coushatta's suit with the Tribal Court, challenging that court's jurisdiction.

Thereafter, on July 7, 2006, Coushatta sought to stay the trial court proceedings on the basis of lis pendens and the exhaustion of tribal remedies doctrine. It also filed an Exception of Lack of Subject Matter Jurisdiction. Coushatta contended that this state court proceeding should be stayed because its suit was pending in Tribal Court before Meyer filed suit in state court and that, pursuant to the federal jurisprudential doctrine of exhaustion of tribal remedies, the Tribal Court should be allowed to determine whether or not Coushatta waived its sovereign immunity. Coushatta further asserted that the trial court did not have subject matter jurisdiction because its January 14, 2003 Resolution did not waive sovereign immunity as required by Tribal ordinance.

Meyer urged in opposition that the above-cited contract provisions waived Coushatta's sovereign immunity, that the Tribal Council representatives who signed the contracts had authority to do so, that the Tribal Court does not have jurisdiction to proceed, and that this litigation is properly before the Fourteenth Judicial District.

2

At a hearing held on October 31, 2006, the trial court denied Coushatta's request to stay these proceedings on the basis of lis pendens and took the other issues under advisement. In its Reasons for Judgment, the trial court held that the exhaustion of tribal remedies doctrine does not apply to this matter and denied Coushatta's Exception of Lack of Subject Matter Jurisdiction.

Coushatta filed this writ application, urging that the trial court erred in failing to stay this proceeding to allow the Tribal Court the first opportunity to determine whether it validly waived its sovereign immunity and in finding that the trial court had subject matter jurisdiction.

### Discussion

#### Appeal versus Writ

Meyer argues that this writ application should be denied because Coushatta has an adequate remedy through an appeal. We do not agree. If Coushatta's writ application is not considered, it must participate in these proceedings to a final judgment before it can appeal, and its defense of sovereign immunity will be effectively lost. *Guidry v. Shelter Ins. Co.*, 535 So.2d 393 (La.App. 3 Cir. 1988).

#### Sovereign Immunity of Indian Tribes

Pursuant to federal law, Indian tribes are subject to suit only where authorized by Congress or the tribe has waived its sovereign immunity. *Kiowa Tribe of Ok. v. Mfg. Techs., Inc.*, 523 U.S. 751, 118 S.Ct. 1700 (1998). In *Kiowa*, the Court reiterated its long-held position that "[t]ribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation." *Id*. at 760, 118 S.Ct. at 1705. Unless

3

Congress abrogates this immunity or the tribe waives it, immunity governs contractual claims against the tribe. *Id.*

An Indian tribe's waiver of sovereign immunity must be clear and express but need not employ the specific words "waive" and "sovereign immunity" to be effective. *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Ok.*, 532 U.S. 411, 121 S.Ct. 1589 (2001). A tribe's agreement "by express contract, to adhere to certain dispute resolution procedures" and to be bound by those resolution procedures has been held to constitute an explicit waiver of sovereign immunity. *Id.* at 420, 121 S.Ct. at 1595.

At the heart of this matter are various provisions in the agreements executed by Coushatta and Meyer which they contend address sovereign immunity. The Agreement for Professional Services provided that it would be "governed by the law of the state in which the principal office of the CMC [Coushatta] is located" and that binding arbitration would be utilized to resolve any disputes that arose with enforcement of the arbitration being enforced in the Coushatta Tribal Court.

The Supplemental Agreement was the subject of a lengthy and detailed Resolution passed by the Tribal Council the same date which authorized the Tribal Chairman "to negotiate and execute all necessary Agreements with Meyer and Associates, Inc." and "to negotiate and execute . . . all Other Agreements as may be necessary to Develop and Implement the [Power Plant Project]." It also authorized the Tribal Chairman to designate someone to act in his stead in conjunction with the Power Plant Project. The Resolution did not, however, specifically waive sovereign immunity.

The Supplemental Agreement revised the Agreement for Professional Services in a number of respects, one being that it and amendments thereto would be "interpreted, governed and construed under the laws of the State of Louisiana." In the Supplemental Agreement, the parties also "irrevocably consent[ed] to the jurisdiction" of Louisiana state courts and agreed that any dispute arising under the contract would be heard "by a court of competent jurisdiction in the Parish of Allen, or any other Parish mutually agreed to, State of Louisiana," and Coushatta "specifically waive[d] any rights, claims or defenses to sovereign immunity" with regard to the Agreement. The subsequent Memoranda of Agreement provided that, if either party had to file suit, it had to be "filed in the Fourteenth Judicial District Court, State of Louisiana."

Coushatta contends that it did not waive its sovereign immunity and is not subject to suit in state court because the January 14, 2003 Resolution does not satisfy its Judicial Code's requirements for waiver of sovereign immunity. Title 1, Section 1.1.05 of Coushatta's Judicial Code provides:

> The Coushatta Tribe of Louisiana, as a sovereign government, is absolutely immune from suit . . . Nothing in this code shall be deemed to constitute a waiver of the sovereign immunity of the Coushatta Tribe of Louisiana except as expressly provided herein or as specifically waived by a resolution or ordinance approved by the Tribal Council specifically referring to such.

Coushatta urges that the trial court should have abstained from exercising jurisdiction and not addressed the issue of waiver of sovereign immunity in light of federal policy considerations which favor allowing tribal courts to determine whether they have jurisdiction to adjudicate matters pending before them.

Meyer urges that Coushatta waived its sovereign immunity by executing the Agreement for Professional Services, the Supplemental Agreement, and the

5

Memoranda of Agreement and that there is no need to apply the exhaustion of tribal remedies doctrine. It contends that the trial court's judgment is correct and should be affirmed.

### *Exhaustion of Tribal Remedies Doctrine*

The federal government favors and encourages tribal self-government, and in furtherance of these policies, the Supreme Court has held that a tribe whose jurisdiction has been challenged should have the first opportunity to determine the validity of such a challenge. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971 (1987); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447 (1985). In *Iowa*, 480 U.S. at 16, 107 S.Ct. at 976 (quoting *National Farmers*, 471 U.S. at 857, 105 S.Ct. at 2454), the Court stated, "[r]egardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.'" This policy favors abstention by non-tribal courts to allow self-government and self-determination by Indian tribes of which tribal courts play an important role. *Nat'l Farmers*, 471 U.S. 845, 105 S.Ct. 2447. The policy allows tribal courts to be the first to respond to the invocation of or a challenge to their jurisdiction. It is prudential not jurisdictional. Therefore, it does not establish adjudicatory authority over lawsuits filed in tribal courts. *Id.* A tribal court's determination that it had jurisdiction is reviewable after tribal remedies have been exhausted. *Id*.

There are exceptions to the application of the doctrine. It does not apply in situations where: "an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' . . . or where the action is patently violative of

6

express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Id.* at 856, 105 S.Ct. at 2454, fn. 21 (internal citations omitted). It also does not apply "[w]hen . . . it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana* [*v. United States*, 450 U.S. 544, 101 S.Ct. 1245, (1981)]*'s* main rule," and the exhaustion requirement "would serve no purpose other than delay." *Strate v. A-1 Contractors*, 520 U.S. 438, 459, 117 S.Ct. 1404, 1416, fn. 14 (1997).

### *Comity*

Being a prudential rule, the doctrine is applied as a matter of comity. *Nat'l Farmers*, 471 U.S. 845, 105 S.Ct. 2447; *Iowa,* 480 U.S. 9, 107 S.Ct. 971. Comity is a discretionary policy where "the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect. Courts extend immunity as a matter of comity to foster cooperation, promote harmony, and build goodwill." *Levert v. Univ. of Ill.*, 02-2679, p. 11 (La.App. 1 Cir. 9/26/03), 857 So.2d 611, 618, *writ denied*, 03-2994 (La. 1/16/04), 864 So.2d 635 (citations omitted). Unless there is an abuse of discretion by the trial court, the decision not to extend comity should not be overturned. *Id.*

The Supreme Court has not specifically held that the exhaustion of tribal remedies doctrine applies to state courts. However, the Court stated in *Iowa*, 480 U.S. at 16, 107 S.Ct. at 977 (emphasis added), that "[a]djudication of such matters *by any nontribal court* . . . infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law."

The Louisiana Supreme Court has not addressed this issue, but prior decisions of this court appear to favor application of the doctrine where appropriate. In *Ortego v. Tunica Biloxi Indians of Louisiana d/b/a Paragon Casino*, 03-1001 (La.App. 3 Cir. 2/4/04), 865 So.2d 985, *writ denied*, 04-587 (La. 4/23/04), 870 So.2d 306, a former nonmember tribal employee sued the tribe for workers' compensation benefits. The tribe filed an exception of lack of subject matter jurisdiction, arguing that the state court should abstain from deciding the issue on the doctrine of exhaustion of tribal remedies and that there was no waiver of sovereign immunity. Another panel of this court noted two factors which weighed against application of the doctrine in that proceeding: the plaintiff's claim for workers' compensation was grounded in Louisiana law, not tribal law; and, suit was initially filed with the Louisiana Office of Workers' Compensation, not in the Tunica-Biloxi tribal court. The panel determined that those circumstances did "not lend themselves to an unbending application of the doctrine of exhaustion of tribal remedies as propounded by the Supreme Court in *National Farmers Union* and *Iowa Mutual,* where claims were pending in tribal court before suit was filed in federal court," *Id*. at 998, and concluded that the tribe's defense of tribal sovereign immunity was the appropriate basis for dismissal not exhaustion of tribal remedies. *See also, Webb v. Paragon Casino*, 03-1700 (La.App. 3 Cir. 5/12/04), 872 So.2d 641, where the findings and reasoning of *Ortego* were adopted by a second panel of this court.

Unlike *Ortego* and *Webb*, the following circumstances present here favor application of the exhaustion doctrine: 1) a contract between a tribe and a nonmember, not a Louisiana statute, is at issue; 2) the stated purpose of the contract is to provide economic support for Coushatta; 3) suit was filed first by Coushatta in

8

its Tribal Court; and 4) interpretation and application of a tribal ordinance bears on the determination of whether the tribe waived sovereign immunity.

Courts of other states have also applied the exhaustion doctrine, finding that federal policy considerations favor application of the doctrine when suit is pending in tribal court and suit is then filed in state court. *See Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians*, 01-1256 (7/17/03), 265 Wis.2d 64, 665 N.W.2d 899; *Drumm v. Brown*, 15809 (7/28/98), 245 Conn. 657, 716 A.2d 50; and *Klammer v. Lower Sioux Convenience Store*, C6-95-279 (Minn.App. 8/1/95), 535 N.W.2d 379.

Meyer assigns a number of reasons why the doctrine should not be applied here. First, it points out that the doctrine is discretionary and is prudential not jurisdictional. It also contends that the structure of the Coushatta ordinance negates the need to observe the exhaustion doctrine. It argues that the introductory phrase in the sentence, "[n]othing in this Code shall be deemed to constitute a waiver of this sovereign immunity, except as expressly provided herein or as specifically waived by a resolution or ordinance approved by the Tribal Council specifically referring to such," renders the provision illogical and without application here because it applies only to other provisions of the Judicial Code.

We agree that the sentence is not well constructed; however, we do not believe Meyer's interpretation is accurate. Furthermore, we find this argument supports application of the exhaustion doctrine to allow the Tribal Court to determine the Tribal Council's intent when it enacted the ordinance.

Meyer also argues that the Tribal Court does not have jurisdiction over it. In *Montana*, 450 U.S. at 564, 101 S.Ct. at 1258 (1981), the Supreme Court held that as

9

a general rule tribal courts do not have civil jurisdiction over nonmembers, stating: "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." The Court has identified two exceptions to this general rule. The first is a tribe's regulation "through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id*. at 565, 101 S.Ct. at 1258. The second is a tribe's "inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id*. at 566, 101 S.Ct. at 1258.

Coushatta contends that its claims against Meyer satisfy these exceptions because the contracts are a consensual relationship between it and Meyer and because it has expended a significant investment under the contracts, which has a direct effect on the economic security and/or wealth of the tribe. Meyer disagrees and argues that the choice of law and forum selection provisions of the contracts evidence that it consented to trial in the Fourteenth Judicial District Court only, not Coushatta's Tribal Court; therefore, the consensual relationship exception of *Montana* does not apply. Meyer seems to argue that Supreme Court decisions after *Montana* require that a nonmember affirmatively consent to a tribe's jurisdiction for the consensual relationship exception to apply. This argument is without merit.

In *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 121 S.Ct. 1825 (2001), the Supreme Court clarified that for the consensual relationship exception to apply in the

10

context of the imposition of a tax or regulation there must be a nexus between the consensual relationship and the tax or regulation imposed by the tribe. Accordingly, "[a] nonmember's consensual relationship in one area . . . does not trigger tribal civil authority in another." *Id*. at 656, 121 S.Ct. at 1833-34. The Supreme Court held that a nonmember hotel owner whose hotel was situated on non-Indian fee land, i.e., privately-owned land within reservation boundaries, could not be required to collect a hotel occupancy tax from its hotel guests, finding the hotel owner did not consent to collect the tax simply because he was an "Indian trader" authorized to conduct commerce with the tribe under federal law. There was no nexus between the hotel owner's consensual relationship with the tribe as Indian trader and the hotel owner's relationship with his nonmember hotel guests, which was the basis for the tax.

*Atkinson* reiterated that *Montana* requires only that the consensual relationship stems from "commercial dealing, contracts, leases, or other arrangements," *Montana*, 450 U.S. at 565, 101 S.Ct. at 1258, and demonstrated that the nature of the relationship with the tribe determines whether the nonmember consented to tribal jurisdiction. It does not support Meyer's argument.

*Strate*, 520 U.S. 438, 117 S.Ct. 1404, also does not support Meyer's position. In *Strate*, two individuals were involved in an automobile accident on a portion of a North Dakota state highway that was situated within an Indian reservation. Neither individual was a member of the tribe whose reservation was the site of the accident. The plaintiff sued the defendant in tribal court to recover for injuries she sustained as a result of the accident. The defendant, who contracted with the tribe to perform landscape work on the reservation, filed suit in federal court seeking a judgment declaring that the tribal court did not have jurisdiction to adjudicate the matter. The

11

Supreme Court concluded that there was no nexus between the defendant's consensual relationship with the tribe (contract to provide landscape work) and the suit by the plaintiff. The tribal court did not have subject matter jurisdiction, and the defendant did not have to wait until the those proceedings concluded to challenge that court's jurisdiction.

In *Nevada v. Hicks*, 533 U.S. 353, 121 S.Ct. 2304 (2001), the Supreme Court held that a tribal court could not assert jurisdiction over a civil rights claim under 42 U.S.C. § 1983 filed by a tribe member against a state official, who executed a search warrant on the tribe member's home with regard to suspected state law violations outside the reservation, because tribal courts are not courts of general jurisdiction and regulation of state officers in that situation was not essential to the tribe's self-government or internal relations. The Supreme Court again concluded that the tribal court did not have subject matter jurisdiction, and there was no need to adhere to the exhaustion doctrine because the only purpose it would serve was to delay the matter.

The relationships in these cases are not comparable to the relationship at issue here, and the holdings therein do not support Meyer's claims. There is a direct nexus between Coushatta and Meyer's consensual, contractual relationship and Coushatta's suit in Tribal Court which is based on that relationship. Therefore, if Coushatta did not waive its sovereign immunity, the Tribal Court has jurisdiction to adjudicate Coushatta's claims as explained in *Montana* and *Atkinson*, and it is appropriate to allow the Tribal Court to address the issue of waiver first.

### Subject Matter Jurisdiction

Meyer also urges that particular provisions of the contracts, i.e., the arbitration provision of the Agreement for Professional Services and the choice of law and

12

choice of forum provisions of the contracts Supplemental Agreement and Memoranda of Understanding, waive Coushatta's sovereign immunity. Therefore, the trial court has subject matter jurisdiction, and it is not necessary for the trial court to defer to the Tribal Court.

The exhaustion doctrine was not at issue in any of the cases cited by Meyer. Therefore, while discussion in those cases addressed the validity of waivers of sovereign immunity, they are distinguishable from this case and do not support Meyer's claim that the exhaustion doctrine should not be applied by this court.

Additionally, actual authority was not at issue in three of the cases Meyer cites in support of its position. In *C & L Enterprises,* 532 U.S. 411, 121 S.Ct. 1589, the Supreme Court held that an arbitration clause which provided for enforcement of any arbitration award in accordance with the laws of Oklahoma waived sovereign immunity; however, the Court specifically noted that authority to waive sovereign immunity was not at issue. The issue in *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 03-0517 (Colo.App. Div.II 8/12/04), 107 P.3d 402, was apparent authority, not actual authority, to waive sovereign immunity, as the tribe did not have any procedure for waiving sovereign immunity, and in *Bradley v. Crow Tribe of Indians*, 02-474 (Mont. 4/15/03), 67 P.3d 306, proof of the contract waiving sovereign immunity, not authority to waive sovereign immunity, was at issue.

In *Smith v. Hopland Band of Pomo Indians*, A093277 (Cal.App.1st Dist. 1/9/02), 95 Cal.App. 4th 1, 115 Cal.Rptr.2d 455, a tribal chairman's authority to waive sovereign immunity was at issue, but the entire contract containing the waiver was presented to and accepted by the entire tribal council, rendering the issue of authority to waive immunity moot. Consequently, the court's lengthy discussion of

13

other factors regarding sovereign immunity was dicta. Lastly, in *Warburton/Buttner v. Tunica-Biloxi Tribe of Louisiana*, D040158 (Cal.App. 4 Dist. 11/26/02), 103 Cal.App. 4th 1170, the determination of waiver was made in the context of whether the plaintiff should be allowed to conduct discovery to prepare an opposition to the tribe's exception of lack of subject matter jurisdiction, not in the context of the merits of the exception itself.

Meyer also points to the affidavits of the former Tribal Council Chairman and former Tribal Council members in which they aver that waivers of sovereign immunity were customarily included in contracts without specific resolutions authorizing them, that they had plenary power to govern Coushatta, and that they knew Coushatta had to waive its sovereign immunity to do business with nonmembers to support its position that the contracts waived Coushatta's sovereign immunity. Coushatta refutes the import of Meyer's arguments with evidence establishing that nonmembers doing business with the Tribe regularly obtained specific resolutions waiving sovereign immunity as provided in the Judicial Code. These arguments and the contradictory supporting evidence favor allowing the Tribal Court to determine whether Coushatta waived its sovereign immunity in its contracts with Meyer.

### Res Judicata

Meyer urges that the Tribal Court's determinations will be res judicata as a reason for not extending comity in this matter. We do not view this as a valid reason to refuse to allow the Tribal Court the opportunity to determine whether Coushatta waived its sovereign immunity. Furthermore, as previously stated, a tribal court's exercise of jurisdiction is reviewable. *Nat'l Farmers,* 471 U.S. 845, 105 S.Ct. 2447.

14

## *Conclusions*

Louisiana and its courts clearly have an interest in seeing that their citizens are protected when they contract with Indian tribes. By the same token, Indian tribes and their courts are interested in insuring that they will be able to contract with nonmember businesses for the products and services needed to sustain the tribe and to allow the tribe to grow and prosper, as evidenced by Coushatta's Power Plant Project. Unfair treatment of nonmembers in Tribal Court will discourage legitimate business concerns from doing business with Coushatta.

For the reasons discussed herein, we conclude that the doctrine of exhaustion of tribal remedies applies to the facts of this case. Therefore, we stay these proceedings to allow the Coushatta Tribal Court to determine whether Coushatta Tribe of Louisiana waived its sovereign immunity in the contracts with Meyer. If the Tribal Court determines Coushatta did not waive its sovereign immunity, proceedings will continue therein, and Meyer may seek a review of that ruling. If the Tribal Court determines Coushatta did waive its sovereign immunity, the parties can return to the Fourteenth Judicial District Court and proceed therein.

**WRIT GRANTED.**