2004 OK CIV APP 36

**MICHAEL MINNIS & ASSOCIATES, P.C., Plaintiff/Appellant,**

v.

**KAW NATION, Defendant/Appellee.**

**No. 99,565.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 18, 2003.

Rehearing Denied Jan. 13, 2004.

Certiorari Denied March 29, 2004.

Michael Minnis, Michael Minnis & Associates, P.C., Oklahoma City, Oklahoma, for Appellant.

Michael Salem, Norman, Oklahoma, for Appellee.

Opinion by LARRY JOPLIN, Chief Judge.

¶1 Plaintiff/Appellant Michael Minnis & Associates, P.C., a corporation (MM & A), seeks review of the trial court's order granting the motion to dismiss of Defendant/Appellee Kaw Nation, denying MM & A's motion to enter judgment, and denying MM & A's motions for "Re–Examination" and to vacate appealable orders, on MM & A's claims to recover attorney's fees for services rendered to the Kaw Nation. Having reviewed the record, however, we discern no error by the trial court, and hold the orders of the trial court should be affirmed.

¶2 The Kaw Nation is a recognized sovereign Native American tribe. The Kaw Nation Executive Council (KNEC) is the primary governing body of the tribe, and is "composed of the following [tribal] officers: Chairman, Vice–Chairman, Secretary and four Council Members." [1,2] The Kaw Nation General Council (KNGC) consists of all members of the Kaw Nation,[3] and the KNGC must, in certain instances, approve the actions of the KNEC.[4]

---

1. Constitution of the Kaw Nation, Art. II, Legislative Functions, § 3(a).

2. See also, Constitution of the Kaw Nation, Art. III, Executive Functions, §§ 1, 2 ("The Executive functions of the Kaw Nation shall be vested in the Chairman, the Vice–Chairman, the Secretary, and the Treasurer"; "It shall be the duty of the Chairman to preside at all meetings of the [KNGC] and [KNEC] [and][t]he Chairman shall have general supervision of the affairs of the [KNGC] and [KNEC]. . . .")

3. Constitution of the Kaw Nation, Art. II, Legislative Functions, § 2.

4. Constitution of the Kaw Nation, Art. II, Legislative Functions, § 4(b)(1–5) (KNGC approval required for: sale, mortgage or alienation of tribally owned lands; enactment, amendment, or repeal of ordinances respecting tribal elections, recall or removal of officers; exercise of eminent domain; appointment of judicial officers; pay increases of tribal officers if paid from tribal funds.)

¶ 3 In 1999, the KNEC resolved to appoint three justices to the Supreme Court of the Kaw Nation, Charles Tripp (Tripp), Charles Morris (Morris) and Michael McBride (McBride), and the KNGC approved the appointments. At some point (the precise date is not borne out by the record) the KNEC resolved to appoint a judge to the District Court of the Kaw Nation, and the KNGC approved the appointment. These appointments filled all judicial positions permitted by tribal law.

¶ 4 On or about January 12, 2002, Vice–Chairman Clyde McCauley (McCauley), Secretary Martha Spotted Bear (Spotted Bear), and two KNEC members, Jesse Mehojah (Mehojah) and Clark Pepper (Pepper), constituting a majority of the KNEC, resolved to contract with MM & A for legal services.[5] On or about January 15, 2002, Minnis, as president of MM & A, and Vice–Chairman McCauley, on behalf of the Kaw Nation, executed a "General Counsel Contract" containing, inter alia, a stipulation to the jurisdiction of the Kaw Nation tribal courts.[6]

¶ 5 In April 2002, the sitting judge of the tribal district court resigned for health reasons, and the KNEC appointed Philip Lujan (Lujan) as a special tribal district court judge to serve until a permanent replacement was found. In June 2002, the KNEC resolved to appoint Lujan as successor tribal district court judge, and although not immediately confirmed by the KNGC, Lujan assumed the duties of the office and exercised authority as a temporary tribal district court judge pursuant to tribal law.

¶ 6 In September 2002, Guy Munroe was elected tribal Chairman and allegedly "blocked" further payments of attorney's fees to MM & A. On or about December 5, 2002, Munroe commenced actions in the tribal district court for removal of McCauley, Spotted Bear, Mehojah and Pepper[7] (hereinafter, Removal Respondents) from the KNEC, and on December 9, 2002, obtained from the tribal district court preliminary injunctions prohibiting the four from exercising their KNEC authority.

¶ 7 In spite of the tribal district court injunctions, the Removal Respondents met three days later on December 12, 2002, and, as an avowed majority of the KNEC, passed several resolutions. One purported to waive tribal sovereign immunity and consent to suit in state court by MM & A to collect the unpaid fees allegedly due under the legal services contract.[8] One purported to vacate Lujan's appointment as tribal district court judge,[9] and another purported to dismantle

---

5. Resolution No. 02–07, signed by the Vice–Chairman of Kaw Nation Executive Council, contained a "certification" that "said resolution was approved and adopted on [January 12,] 2002, as an official act by quorum vote of the Kaw Nation Executive Council, ... that the vote was 4 for; [0] against; 1 abstentions; and 1 absent," and was signed by the Executive Council Vice–Chairman.

6. On page five of the contract, the parties struck the original typewritten ¶ 15 of the agreement, providing:

Immunity. For the limited purpose of allowing [MM & A] to enforce this contract, the Kaw Nation hereby waives immunity to suit and agrees that suit may be filed in the state District Court for Oklahoma County. For the purpose of enforcing any money judgment obtained by [MM & A] hereunder, the Kaw Nation also waives governmental immunity as to its non-federal, non-trust assets.

The parties substituted a hand written ¶ 15, which provided:

It is understood and mutually agreed that as a material and substantial consideration of this agreement that the parties' mutually stipulate to the jurisdiction of the courts of the Tribe.

7. The four KNEC members who initially voted to approve the MM & A legal services contract.

8. Resolution No. 02–98 dated December 12, 2002, "waive[d] sovereign immunity and submitt[ed] to the jurisdiction of the courts of the State of Oklahoma solely to allow [MM & A] to sue the Kaw Nation for the recovery of attorney fees and expenses incurred under said contract and to pursue post-judgment remedies against the assets of the Kaw Nation." That resolution contained a "certification" "that the above and foregoing resolution is a true, accurate and correct copy of the resolution duly adopted and approved on the 12th day of December, 2002, as an official act by quorum vote of the Kaw Nation Executive Council, and that the vote was 4 for; 0 against; 0 abstentions; and 3 absent," and was signed by the Executive Council Vice–Chairman, Secretary, and two other members of the Executive Council.

9. KNEC Resolution No. 02–95.

the tribal judicial system and submit to the courts of the Bureau of Indian Affairs.[10]

¶ 8 On December 15, 2002, the KNGC met. At that meeting, the KNGC passed resolutions approving the appointment of Lujan as tribal district court judge, and "reaffirming" an earlier KNGC decision of June 2002 to discharge MM & A as tribal general counsel. On or about December 20, 2002, Munroe—in his avowed capacity as tribal Chairman and allegedly on behalf of the Kaw Nation—commenced an action in tribal district court against Minnis, seeking recovery of over $90,000.00 previously paid pursuant to the parties' legal services contract.

¶ 9 On January 7, 2003, MM & A filed its original petition to commence the instant action in the state trial court for breach of contract, seeking recovery of unpaid legal fees for services rendered to the Kaw Nation pursuant to the "General Counsel Contract" executed by Vice–Chairman McCauley. To the petition, MM & A attached a copy of the contract, and copies of the two KNEC resolutions approving the General Counsel contract and consenting to state court jurisdiction.[11]

¶ 10 Also in January 2003, the Removal Respondents—both individually and purportedly on behalf of the Kaw Nation, and represented by Minnis—filed suit in the United States District Court for the Western District of Oklahoma against Lujan, tribal justices Tripp and Morris, and Munroe as tribal Chairman. In the suit, the Removal Respondents alleged tribal and federal constitutional and statutory violations by the tribal courts,

and sought to enjoin the tribal judges' exercise of judicial authority, as well as Munroe's payment of their compensation from tribal funds.

¶ 11 On or about January 24, 2003, Lujan and Munroe filed motions to dismiss in the federal court action. In February 2003, considering the "tortuous and constantly changing" background of the case, the federal district court dismissed the Removal Respondents' action for failure to exhaust tribal remedies.[12]

¶ 12 On or about January 31, 2003, MM & A filed a motion for judgment in the present action. In support, MM & A offered KNEC resolutions passed by the Removal Respondents purporting to waive the tribe's sovereign immunity, submitting to the jurisdiction of the trial court, and confessing judgment.

¶ 13 Also on January 31, Munroe filed a motion to dismiss, asserting: improper venue; another suit pending (in tribal court); the contractual stipulation to tribal court jurisdiction; tribal sovereign immunity; invalidity of any waiver of tribal immunity by the Removal Respondents; and failure to exhaust tribal remedies. In support of the motion to dismiss, and in opposition to the motion for judgment, Munroe submitted his affidavits and evidentiary materials demonstrating the facts we have recounted. Munroe also submitted evidence of subsequent resolutions of the KNGC in February 2003(1) reaffirming the previous appointments of the tribal justices; (2) expressly holding all resolutions passed by the Removal Respondents to be void ab initio[13]; and (3) demanding the

---

10. KNEC Resolution No. 02–96A provided: "The Kaw Nation hereby explicitly turn the control of its courts back to the Bureau of Indian Affairs and submits to the jurisdiction of the courts of the Bureau of Indian Affairs...."

11. See, footnotes 5, 8, supra.

12. Particularly, the federal district court reasoned: (1) the "futility" exception to the exhaustion-of-tribal-remedies doctrine is not properly invoked by the bare challenge to the jurisdiction of the tribal courts; (2) the "existence of a tribal forum is, at a minimum, 'facially apparent'" from the record; and (3) "the issue of the [tribal] judicial officers' authority to act is purely intratribal in nature ... requir[ing] an in-depth consideration and comparison of tribal constitution-

al provision," a "herculean task," "properly resolved, at least in the first instance, in a tribal forum."

13. KNGC Resolution No. 03–15:(1) explicitly "affirms [the KNGC's] superintending authority under the Kaw Nation Constitution in the governance of tribal affairs"; (2) "rejects any action or effort of the [KNEC] or any subgroup to return the judicial system to the" BIA; (3) holds "all of the [previous] resolutions proposed by [Removal Respondents] ... to be null and void from their beginning"; (4) authorizes expenditure of tribal funds to recover any loss to the tribe caused by the Removal Respondents and to defend any of the pending related suits; and (5) "[t]hat the [KNEC], or any subgroup, ... shall not waive sovereign immunity or consent to any suit

resignation of the Removal Respondents. Munroe additionally offered evidence of two orders of the tribal district court removing McCauley and Pepper; a decision of the tribal Supreme Court holding Lujan properly seated as tribal district court judge [14]; and a decision of the Department of Interior, Office of Hearings and Appeals granting a "stay of the retrocession" "until the Nation has had an opportunity to resolve" the "political disagreement between two factions of the [KNEC]" which "involves very fundamental issues under ... the Nation's own Constitution."

¶ 14 MM & A responded, asserting that Munroe lacked standing to represent tribal interests, and resort to tribal remedies would be futile, arguing that no tribal court system existed. On the standing issue, MM & A offered provisions of the tribal constitution purported to vest in the KNEC sole authority to represent tribal interests. To demonstrate "futility," MM & A presented evidentiary materials argued to show that KNEC—by and through the Removal Respondents—had resolved to dismantle the Kaw Nation tribal court system, to "turn control of [the Kaw Nation] courts back to the Bureau of Indian Affairs and submit to the jurisdiction of the courts of the" BIA,[15] and BIA's acknowledgment of "the retrocession ... pursuant to a vote of the [KNEC]."

¶ 15 The trial court granted Munroe's motion to dismiss and denied MM & A's motion for judgment "without prejudice for [MM & A] to pursue its remedies in the Kaw Nation tribal court." MM & A filed motions to vacate and reconsider, which the trial court denied. MM & A appeals, and the matter stands submitted for accelerated review on the trial court record.[16]

 ¶ 16 "Where a motion to dismiss tenders facts to be considered by offering materials dehors the pleadings, it is incumbent upon the trial court to treat the motion as one for summary judgment." *Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 17, 987 P.2d 1185, 1192. See also, 12 O.S. § 2012(B). We review an order granting a motion for summary judgment "by a de novo standard." *Prudential Ins. Co. of America v. Glass,* 1998 OK 52, ¶ 2–3, 959 P.2d 586, 588; *Sperling v. Marler,* 1998 OK 81, ¶ 3, 963 P.2d 577, 579. The trial court's ruling on a motion to vacate will not be disturbed unless affected by an abuse of discretion. *See, e.g., Nelson v. Nelson,* 1998 OK 10, ¶ 23, 954 P.2d 1219, 1228. The trial court's ruling on a motion for new trial or reconsideration will likewise remain undisturbed unless affected by an abuse of discretion. *See, e.g., Strubhart v. Perry Memorial Hosp. Trust Authority,* 1995 OK 10, ¶¶ 16–17, 903 P.2d 263, 269–270.

 ¶ 17 "[T]he [U.S.] Supreme Court has uniformly recognized that one of the fundamental aspects of tribal existence is the right to self-government." *Wheeler v. U.S. Dep't of the Interior,* 811 F.2d 549, 551 (10th Cir.(Okla.) 1987). (Citations omitted.) In deference to the tribal rights of self-government, and "as a matter of *comity*, a *federal* court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies." *Tillett v. Lujan,* 931 F.2d 636, 640 (10th Cir.(Okla.) 1991). (Emphasis added.)[17]

brought in derogation of the Kaw Nation's sovereign immunity and that such power and authority shall be reserved only to the [KNGC]."

14. The Kaw Nation Supreme Court noted in its decision that "the resolutions passed by Removal Respondents on December 12, 2002 are void because they are inconsistent with the [Kaw Nation] Constitution."

15. "A 'C.F.R. court' is a court created pursuant to Bureau of Indian Affairs regulations to preside over tribal matters in the absence of a court established by tribal government. 25 C.F.R. §§ 11.100; see *Tillett v. Lujan,* 931 F.2d 636,

638, 640 (10th Cir.1991)." *Pounds v. Department of Interior,* 9 Fed.Appx. 820, 821, fn. 1. (10th Cir.(Okla.) 2001).

16. See, Rules 4(m), 13(h), Rules for District Courts, 12 O.S.2001, Ch. 2, App.; Ok.S.Ct.R. 1.36, 12 O.S.2001, Ch. 15, App.

17. In this respect, the exhaustion-of-tribal-remedies doctrine dictates that the question of tribal court jurisdiction "should be conducted in the first instance in the Tribal Court itself." *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 856, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (U.S.Mont. 1985). The exhaustion

¶ 18 However, the exhaustion doctrine does not apply in state court actions. An action against a sovereign Native American tribe in state court is barred absent Congressional authorization or an express waiver of tribal sovereign immunity:

In *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), the manufacturing company brought suit in state court to recover on a promissory note executed by the Kiowa Tribe. The Tribe moved to dismiss based on the doctrine of sovereign immunity. The District Court denied the motion to dismiss, and granted judgment in favor of the manufacturing company. The Oklahoma Court of Civil Appeals affirmed....

The United States Supreme Court reversed the Court of Civil Appeals, holding that *"tribal immunity is a matter of federal law and is not subject to dimunition [sic] by the States." "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."* The Court continued by pointing out that in its cases, immunity from suit has been sustained without distinction as to where the activities occurred. Nor is there to be a distinction based on whether the activities are commercial or governmental. The Court reiterated that in some instances the state might have the right to demand compliance with state laws, but may have no means available to enforce those laws.

. . . .

It is true that this rule of law may discourage certain entities from wanting to do business with tribes, and such public policy considerations played a role in our earlier decisions. However, the Supreme Court has noted, as do we, that an express waiver of sovereign immunity may be inserted into the contract, and when so done

the business or entity will be protected, and will have preserved its right to pursue the matter in state court.

*Carl E. Gungoll Exploration Joint Venture v. Kiowa Tribe of Oklahoma,* 1998 OK 128, ¶¶ 8–10, 975 P.2d 442, 444–445. (Footnotes omitted.) (Citations omitted.) (Emphasis added.) So, absent an express waiver of tribal sovereign immunity or Congressional authorization, the Kaw Nation cannot be sued in the Oklahoma state courts.

¶ 19 In the present case, MM & A offered what appeared to be the facially valid KNEC Resolutions passed by the Removal Respondents purporting to waive tribal sovereign immunity, consent to the jurisdiction of the trial court and confess judgment in favor of MM & A. MM & A also presented evidence argued to show the total absence of a tribal judicial forum for resolution of his claim, and challenged Munroe's capacity to represent tribal interests in this litigation under the tribal Constitution.

¶ 20 In opposition, however, Munroe adduced uncontroverted evidence of an existing, functioning tribal judicial system compromised of a properly seated tribal district judge and tribal Supreme Court justices, and the Department of Interior's "stay" of the Removal Respondents' attempted retrocession of the tribal courts. Munroe also offered uncontroverted evidence of the Kaw Nation Supreme Court decision, holding that the Removal Respondents' attempts to waive sovereign immunity, consent to jurisdiction, confess judgment and dismantle the tribal judicial system were wholly void as in violation of the tribal constitution and the preliminary injunctions issued by the tribal district court in the removal proceedings. Lastly, Munroe offered uncontroverted evidence that the KNGC expressly authorized his defense of the present action on behalf of the tribe.[18]

¶ 21 The parties' contract contained an express stipulation to the jurisdiction of the

---

doctrine does not bar a suit in federal court in some instances, if, for instance, "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction." *National Farmers Union Ins. Co.*, 471 U.S. at 856, 105 S.Ct. at 2454, fn. 21. But, the federal courts generally apply the "futility" exception only in the total absence of a tribal

court system. *See, e.g., Comstock Oil & Gas, Inc. v. Alabama and Coushatta Indian Tribes of Texas,* 261 F.3d 567, 572–573 (5th Cir.(Tx.) 2001).

**18.** MM & A's "Motion to Strike Phrase from Entry of Appearance," by which it questioned the capacity of Munroe's legal counsel to represent the Kaw Nation, is accordingly denied.

tribal courts, and the uncontroverted evidence established invalidity of the attempted waiver of tribal sovereign immunity, consent to jurisdiction and confession of judgment affected by the Removal Respondents. Absent a valid, express waiver of tribal sovereign immunity by contract, the tribal government or Congressional authorization, MM & A's state court action is barred. *Gungoll Exploration Joint Venture,* 1998 OK 128, ¶¶ 8–10, 975 P.2d at 444–445.

¶ 22 The order of the trial court denying MM & A's motion to reconsider and motion to vacate is therefore AFFIRMED.

ADAMS, P.J., and JONES, J., sitting by designation, concur.